## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ST. JOHN'S UNITED CHURCH OF
CHRIST, an Illinois not-for-profit
corporation; HELEN RUNGE; SHIRLEY
STEELE; REST HAVEN CEMETERY
ASSOCIATION, an Illinois not-for-profit
corporation; ROBERT PLACEK; LEROY
H. HEINRICH; VILLAGE OF
BENSENVILLE, ILLINOIS, an Illinois
municipal corporation; ROXANNE
MITCHELL; and the VILLAGE OF ELK
GROVE, ILLINOIS, an Illinois municipal
corporation,

        Plaintiffs,

        v.

THE CITY OF CHICAGO, an Illinois
municipal corporation; RICHARD M.
DALEY, Mayor of the City of Chicago;
FEDERAL AVIATION
ADMINISTRATION; MARION C.
BLAKEY, Administrator of the Federal
Aviation Administration; the STATE OF
ILLINOIS; and ROD R. BLAGOJEVICH,
Governor of the State of Illinois.

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 03 C 3726

HONORABLE DAVID H. COAR

## MEMORANDUM OPINION AND ORDER

Before this Court is a host of motions filed by Plaintiffs and Defendants in this case, as well

as their responses to this Court's rule to show cause.

Plaintiffs' motion to file a proposed second Amended Complaint is DENIED with respect

to Counts I through X but GRANTED with respect to Count XI. Given that no unique counts remain

-1-

in the first Amended Complaint that overcome the problems raised by this Court in its show cause order and in this opinion, Plaintiffs' first Amended Complaint is DISMISSED. The TRO is VACATED. Based on the actions in this opinion, Plaintiff's motion for a preliminary injunction is DENIED as MOOT.

## Factual and Procedural Background[1]

This case is one skirmish in a series of battles between those who support the expansion of O'Hare International Airport and those who do not. At the inception of this litigation, plaintiffs included the villages of Elk Grove and Bensenville ("the Municipal Plaintiffs"); St. John's United Church of Christ and two parishioners named Shirley Steele and Helen Runge ("the St. John's Plaintiffs"); and Rest Haven Cemetery Association and two members of its board of directors Leroy Heinrich and Robert Placed ("the Rest Haven Plaintiffs"). These plaintiffs sued the City of Chicago ("City" or "Chicago") and Mayor Richard M. Daley; the State of Illinois and Governor Rod R. Blagojevich; and the Federal Aviation Administration and Administrator Marion Blakey (collectively referred to as "FAA") based on allegations arising from the Defendant's involvement in plans to expand O'Hare. Plaintiffs alleged that the City planned to build runways on land currently located in Bensenville and Elk Grove, including land currently used by St. Johannes Cemetery, the cemetery affiliated with St. John's, and land used by Rest Haven Cemetery.

This is not, of course, the first time that critics have opposed expansion of O'Hare. Nor is this the first time that Bensenville and Elk Grove Village have filed suit to ward off expansion. In

---

[1] For the purpose of this opinion, all facts alleged by Plaintiffs in their proposed Seconded Amended Complaint are assumed to be true. This Court also takes judicial notice of the proceedings in *Village of Bensenville et al. v. FAA,* No. 5-1383 (D.C. Cir.filed Sept. 30, 2005).

1974, for example, the two municipalities were part of a group called the Suburban O'Hare Commission ("Suburban") that intervened in litigation alleging that the FAA had violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §4321, et seq. by adopting a policy of unlimited growth at O'Hare. *See Suburban O'Hare Comm'n et al. v. Dole*, 787 F.2d 186, 188-89 (7th Cir. 1986) (citing *State of Illinois ex rel. Scott v. Butterfield*, No. 74-2440 (N.D. Ill. 1974). The litigation ended on October 15, 1982, when the FAA, the City, and Suburban entered into a consent decree that governed the future growth of O'Hare. *Id.*

Roughly two years later, Suburban filed a separate suit against the FAA and the City in district court, alleging that the approval of a proposed airport layout plan (or "ALP") violated the consent decree; NEPA; the Airway and Airport Improvement Act ("AAIA"), and the Clean Air Act, 42 U.S.C. §§7401 et seq. *Id.* at 192. Prior to the district court's dismissal of the suit, Suburban filed a petition for review in the Seventh Circuit. Suburban argued at the time that the FAA's order approving the ALP could only be reviewed in district court. The Seventh Circuit disagreed, finding exclusive jurisdiction in the courts of appeals. *See id.* at 195.

The current litigation stems from Chicago's most recent efforts to expand O'Hare; efforts that compose what Mayor Daley termed the "O'Hare Modernization Project" ("OMP"). The OMP, made public in July 2001, includes plans for building new runways. In a attempt to garner support for the OMP, Chicago claimed that by building new runways, it could more than double O'Hare's capacity for boarding passengers and reduce flight delays by 79% overall. These and other claims regarding the OMP were based on material affirmative misstatements and knowing omissions or concealment of facts.

When he announced his plans for O'Hare expansion, the Mayor noted that it would be necessary for the City to acquire land in Elk Grove Village and Bensenville–including St. Johannes Cemetery land and Rest Haven Cemetery land–so that the new runways could be constructed. In June 2002, Chicago announced that it would begin efforts to acquire several parcels of land in Elk Grove and Bensenville, including homes, businesses, park land, and St. Johannes and Resthaven. In response, the municipalities filed suit in state court. They requested an injunction barring Chicago from proceeding with the acquisition before obtaining a "certificate of approval" from the Illinois Department of Transportation ("IDOT") pursuant to 620 ILCS 5/47. In support of their request, they argued that any ultimate decision to protect parcels of land from acquisition would be meaningless if acquisition and demolition had already occurred. On July 9, 2002, an Illinois Circuit Court enjoined Chicago from taking any steps to acquire any property in the two municipalities unless it first obtained a certificate of approval from IDOT. The decision was affirmed by the Illinois Appellate Court in *Philip v. Daley*, 790 N.E.2d 961 (Ill.App.Ct. 2003).

According to Plaintiffs, Chicago "clearly did not like" the state laws that enabled Plaintiffs to receive an injunction. It requested that the Illinois General Assembly pass the O'Hare Modernization Act (the "OMA"), which amended the Illinois Religious Freedom Restoration Act to state that "[n]othing in this act limits the authority of the City of Chicago to exercise its powers under the O'Hare Modernization Act for the purposes of relocation of cemeteries or the graves located therein." The legislature complied with the request and passed the OMA in May 2003.[2] The

---

[2] Plaintiffs allege that Governor Blagojevich signed the law on August 6, 2003.

City of Chicago also requested FAA approval of its proposed "airport layout plan" ("ALP"), pursuant to 49 U.S.C. §47107(a)(16).[3]

In response to the enactment of the OMA, the Municipal Plaintiffs, the St. John's Plaintiffs, and the Rest Haven Plaintiffs filed suit in this Court on May 30, 2003. They originally filed suit against the City and Mayor Daley, the state and Governor Rod Blagojevich, and the FAA and administrator Marion Blakey. Plaintiffs then filed an amended 21-count amended complaint on June 19, 2003. Many of their claims hinged on the fact that Chicago was proposing to acquire the land before the FAA had issued an Environmental Impact Statement or a Record of Decision.

In the amended complaint, all the named plaintiffs alleged that Chicago and Mayor Daley had violated NEPA and its implementing regulations; the National Historic Preservation Act (NHPA), 16 U.S.C. §470 et seq. and its implementing regulations; and §4(f) of the Department of Transportation Act, 49 U.S.C. §303(c). They also claimed that by allowing violations of those statutes, the FAA and Blakey had violated the Administrative Procedures Act, 5 U.S.C. §706.

In addition to those claims, the St. John's and Rest Haven Plaintiffs filed several claims based on religion. Against the City and Mayor Daley, they alleged violations of the Free Exercise Clause of the First Amendment of the United States Constitution (both for targeting Plaintiffs and for placing a substantial burden on Plaintiffs' religious beliefs and practices–see Counts IV and XII); violations of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution (both for discriminating against Plaintiffs and for hiding data that had been shared with

---

[3] The FAA's approval of an ALP constitutes a finding that the ALP is eligible for federal funding. *City of Cleveland, Ohio v. City of Brook Park, Ohio*, 893 F.Supp. 742, (N.D.Ohio, 1995)(citing *City of Grapevine, Tex. v. Department of Transportation*, 17 F.3d 1502, 1503 (D.C.Cir. 1994) and *Citizens Against Burlington, Inc. v. Busey*, 938 F.2d 190, 197 (D.C.Cir. 1991))..

other parties–see Counts XVIII and XXI); violations of the Fifth Amendment Takings Clause of the United States Constitution (see Count XX); and violations of the Due Process Clause (see Count XXI). These plaintiffs also alleged that Chicago and Mayor Daley violated RLUIPA (see Count VIII).

As for the FAA and Blakey, the St. John's and Rest Haven Plaintiffs alleged that the federal defendants violated the Free Exercise Clause (see count XVI); the Due Process Clause and the Equal Protection Clause (see Count XXI); and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb et seq. (Count XVI).

The St. John's and Rest Haven Plaintiffs also alleged that the State of Illinois and Governor Blagojevich violated the Free Exercise Clause (see Counts VI and XII); the Equal Protection Clause (see Count XIX); and RLUIPA, 42 U.S.C. §2000cc et seq.(see Count X).

On July 10, 2003, the parties entered into an agreed order stating that "The City of Chicago agrees that City voluntarily agrees that it will not acquire property in the Village of Bensenville and Elk Grove Village for the OMP, or acquire Rest Haven or St. Johannes Cemeteries, unless and until the FAA has issued a Record of Decision following completion of an EIS [environmental impact statement] for the OMP."

Sometime after December 2003, Chicago sought FAA approval and authorization for over $1.3 billion in federal funding for the portion of the OMP termed "Phase One," including approximately $300 million in "airport improvement program"("AIP") discretionary funds, $63 million in entitlement funds, and an excess of $1 billion in Passenger Facility Charge ("PFC") funds.

In January 2005, the FAA announced that it would prepare a single environmental impact statement–a document required by NEPA–to accompany both the request for ALP approval and the

request for funding. The EIS serves as a basis for the FAA's eventual "Record of Decision" ("ROD") on a specific topic.

In late July 2005, the FAA issued its final EIS. In that document, the FAA compared the environmental impact of Chicago's proposal with other alternatives. The FAA concluded that the alternative proposed by Chicago–with some refinement–was the preferred alternative. The EIS included a comprehensive review of the legal issues raised by the St. John's Plaintiffs and Rest Haven Plaintiffs. The FAA noted that if the preferred alternative and refinements were approved in the ROD and the City decided to implement the revised proposal with the aid of federal funding, St. Johannes would be relocated while Rest Haven would not.

On September 30, 2005, the FAA issued a ROD granting Chicago's request for ALP approval. In the ROD, the FAA went through an extensive analysis of the claims related to religion filed by the St. John's Plaintiffs and the Rest Haven Plaintiffs. The agency noted that it had hoped at the beginning its review of the ALP that the "difficult and sensitive issues involving potential cemetery relocation could be resolved in a collaborative and consensual manner," but after "extensive correspondence, a succession of meetings, and pending litigation, the FAA clearly understands that there remains strong opposition by the religious objectors to relocation of graves from St. Johannes Cemetery and preservation of Rest Haven Cemetery as proposed in the Final EIS." ROD at 91. The FAA reviewed the RFRA claims and concluded that while the acquisition and relocation of St. Johannes Cemetery was likely to substantially burden the exercise of religion, there

was a compelling government interest in taking immediate federal action to addresses the aviation needs of the Chicago region by reducing delays at O'Hare.[4]

That same day, the Municipal Plaintiffs and the St. John's Plaintiffs filed suit in the District of Columbia Court of Appeals, pursuant to 49 U.S.C. §46110. As part of that litigation, Plaintiffs filed a Petition for Review of the FAA's July 25, 2005 EIS and the FAA's September 30, 2005 ROD. In that petition, Plaintiffs alleged that the FAA's approval of the ALP violated, *inter alia*, the First and Fifth Amendments and Article III of the Constitution; RFRA.; NEPA; Chapter 471 of Title 49 of the U.S. Code, Section 4(f) of the Department of Transportation Act, 49 U.S.C. §303(c); Section 6(f) of the Interior Land and Water Conservation Fund Act, 16 U.S.C. §4601-8(f)(3); Section 106 of the NHPA, 16 U.S.C. 470(f); and section 176(c) of the Clean Air Act, 42 U.S.C. §7506(c).

Along with the Petition, the Municipal Plaintiffs and the St. John's Plaintiffs also filed an emergency motion for a stay pending appeal and a motion for an administrative stay pending resolution of Petitioner's motion for a stay pending appeal. That day, the latter was granted so that the Court of Appeals would have sufficient opportunity to consider the emergency motion for stay pending appeal. The petitioners argued in the emergency motion for stay pending appeal that they were likely to succeed on the merits of their appeal because the FAA's action in issuing an ROD that approved of the City's ALP violated RFRA and because the ROD did not address funding issues. The FAA responded. Chicago was permitted to intervene in the suit.

---

[4]In the EIS, the FAA noted that in 2003, a total of one-third of the delays for the twenty most delayed airports in the National Airport System occurred at O'Hare and that O'Hare's share of delays was at least twice those experienced by Atlanta or Newark, the next most delayed airports. This Court does not cite these claims by the FAA as established fact but rather includes them in order to provide some background on the ROD process.

In light of the FAA's approval of the City's ALP and the ensuing litigation in the D.C. Circuit, this Court issued an order to show cause as to why all but four of the counts in the First Amended Complaint should be dismissed. The four counts not subject to the show cause order were: Count IV, a §1983 claim against the City for imposing a substantial burden on the St. John's Plaintiffs in violation of the Free Exercise clause; Count VIII, a §1983 claim against Chicagor for violating the St. John's Plaintiffs' rights under RLUIPA; Count XII, §1983 claim against the City for targeting the St. John's Plaintiffs in violation of the Free Exercise clause; and Count XVIII, a §1983 claim against the City for discriminating against St. John's Plaintiffs in violation of the Equal Protection clause. In the memorandum accompanying the order, this Court raised concerns about exercising any jurisdiction over the FAA in light of 49 U.S. §46110, and the fact that all parties appeared to be litigating identical issues in both the D.C. Circuit and in the Northern District of Illinois. All parties filed responses. Plaintiffs' responses repeatedly made reference to a second amended complaint they planned to seek leave to file.

On October 7, 2005, the FAA advised the United States Court of Appeals for the D.C. Circuit that it intended to award Chicago the requested $363 million in AIP discretionary funds for phase one of O'Hare development ("Phase One") in early November 2005, but had not yet made a substantive decision granting Chicago's request. The FAA argued that without a final decision on funding, the Court of Appeals did not have subject matter jurisdiction over claims concerning NEPA and RFRA compliance. To the best of this Court's knowledge, the FAA has not yet issued a funding decision.

On October 25, 2005, the D.C. Circuit denied the emergency motion for a stay pending appeal. In its one-page denial, the appellate court stated that Plaintiffs had not "demonstrated the

irreparable injury or likelihood of success on the merits required for the issuance of a stay pending review." *Village of Bensenville et al. v. FAA,* No. 5-1383, 2005 U.S.App.Lexis, 23277 (D.C. Cir. October 25, 2005.) In its denial, the D.C. Circuit did not expressly answer the question as to whether it had jurisdiction over the funding issues prior to a final FAA decision on funding.

The next day, the Municipal and St. John's Plaintiffs returned to this Court, where they filed a motion for leave to file a second amended complaint, a motion for a temporary restraining order, and a motion for a preliminary injunction.[5]

In their proposed Second Amended Complaint, Plaintiffs allege violations of RFRA (Count VII); NEPA; Section 4(f) of the Department of Transportation Act; Section 106 of the NHPA; Section 509 of the AAIA (Count VIII); Article III of the United States Constitution and the Due Process Clause of the United States Constitution (Count X). They take issue with the process the FAA has used for disseminating information with respect to the O'Hare expansion and so allege a violation of the Freedom of Information Act (Count XI). In addition, the St. John's Plaintiffs allege FAA violations of their rights under the Free Exercise Clause of the First Amendment of the United States Constitution (Count II), the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution (Count IV), and the RLUIPA (Count VI). The St. John's Plaintiffs also allege that they have a right to have contested issues of facts relating to their RFRA claim tried in an Article III court (Count IX).

---

[5] The proposed Second Amended Complaint does not include either the Rest Haven Plaintiffs or Mayor Daley as parties to the litigation. For the sake of simplicity, when referring to the proposed Second Amended Complaint, this Court will use the term "Plaintiffs" to refer to St. John's Plaintiffs and the Municipal Plaintiffs, This Court will use the same approach with respect to the term "Defendants" which originally included a reference to Mayor Daley, the State of Illinois, and Governor Blagojevich but does not do so with respect to the proposed Second Amended Complaint.

After filing their motion to submit a second amended complaint in this court, the Plaintiffs returned to the D.C. Circuit where they filed a docketing statement of issues on October 31, 2005. In that non-binding statement, they submitted 14 different issues. Included were issues of whether the FAA was in violation of RFRA; NEPA; Section 4(f) of the Department of Transportation Act; Section 106 of the National Historic Preservation Act; the Due Process Clause; the Free Exercise Clause; Chapter 471 of Title 49 of the United States Code; Section 6(f) of the Department of the Interior Land and Water Conservation Fund Act, 16 U.S.C. §4601-8(f)(3); and Section 176(c) of the Clean Air Act, 42 U.S.C. §7506(c). They also submitted that the issues of whether the FAA improperly failed to rule on Chicago's funding applications, violated the Administrative Procedure Act by failing to provide Petitioners with a formal adjudicatory hearing to resolve their claims under RFRA and the First Amendment, and issued an unlawful ROD were properly before the D.C. Circuit. In addition, Plaintiffs raised the question of whether their First Amendment and RFRA claims require *de novo* review of contested issues of fact and law by an Article III court.

Back in this Court, on November 3, 2005, the parties appeared for a motion hearing on Plaintiffs' motion to file a second Amended Complaint; Plaintiffs' motion for a temporary restraining order; and Plaintiffs' motion for a preliminary injunction. At that hearing, this Court granted the motion for a TRO until November 14, 2005 in order to review the proceeding in the D.C. Circuit. On November 14, 2005, this Court extended the TRO until November 16, 2005, and also continued the motion for leave to file a second Amended Complaint and the motion for a preliminary injunction. Also pending are motions to dismiss the amended complaint, filed by the City and Mayor Daley and the FAA and Administrator Blakey.

<u>Standard of Review</u>

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss an action when it lacks subject matter jurisdiction. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir.2003). When reviewing a motion to dismiss brought under Rule 12(b)(1), this court "must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir.1995) (citing *Rueth v. United States Environmental Protection Agency*, 13 F.3d 227, 229 (7th Cir.1993)). The burden of proof, however, is "on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946. When determining subject matter jurisdiction, this court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel*, 66 F.3d at 897 (*quoting Capitol Leasing Co. v. Federal Deposit Insurance Corp.*, 999 F.2d 188, 191 (7th Cir.1993)).

The purpose of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990) (citation omitted). On a 12(b)(6) motion, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true and views the allegations in the light most favorable to the plaintiff. *Bontkowski v. First National Bank of Cicero*, 998 F.2d 459, 461 (7th Cir.1993). The Court should not dismiss a complaint "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

The Federal Rule of Civil Procedure 15(a) provides that, in most instances, a party must seek leave of court to amend his complaint and instructs the courts to grant leave 'when justice so

requires.' Fed. R. Civ. Proc. 15(a). "The terms of the rule, however, do not mandate that leave be granted in every case. In particular, a district court may deny a plaintiff leave to amend his complaint if 'there is undue delay, bad faith [,] or dilatory motive ... [, or] undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Park v. City of Chicago,* 297 F.3d 606, 612 (7th Cir. 2002)(*citing Ferguson v. Roberts,* 11 F.3d 696, 706 (7th Cir.1993)).

Analysis

This Court begins its analysis of the issues in this case by reviewing Plaintiffs' response to its rule to show cause motion. In the memorandum accompanying its rule to show cause, this Court noted that Rest Haven is no longer affected by the O'Hare Expansion Project. Plaintiffs do not contend, in their response to the rule to show cause, that Rest Haven will have to be relocated as a result of O'Hare Expansion. Instead, Plaintiffs' response states that this Court should either issue an enforceable order stating "(a) that Chicago will preserve and leave forever undisturbed the graves of the departed at Rest Haven; and (b) that Chicago will guarantee the Rest Haven plaintiffs continued access to the Rest Haven Cemetery" or proceed to judgment on the Amended Complaint.

There is no reason why it the Rest Haven Plaintiffs should not be dismissed from this litigation. The Rest Haven Plaintiffs were given full and fair opportunity to present arguments as to why they are in any way affected by proposed actions by the City and the FAA and failed to do so. Given the lack of a present dispute, this Court concludes that the Rest Haven Plaintiffs are not presently threatened with harm. Plaintiffs were given ample opportunity to show that there is harm such that Article III standing requirements are satisfied, and failed to do so. Consequently, all counts of the First Amended Complaint brought by the Rest Haven Plaintiffs are dismissed with prejudice. The dismissal of Rest Haven Plaintiffs results in a dismissal of counts V, IX, XIII, XV, and XVII of

the Amended Complaint in their entirety and a dismissal of counts I-III, XVIII, XX, and XXI of the Amended Complaint as they pertain to the Rest Haven Plaintiffs.

In the memorandum accompanying the rule to show cause this Court also requested that Plaintiffs show cause as to why Mayor Daley should not be dismissed from this litigation given that bringing suit against a municipal officer in his official capacity and suit against the municipality is duplicative. Rather than addressing the issue raised by the Court, Plaintiffs argue that they should be permitted to file suit at some point in the future against Mayor Daley in his personal capacity. The question of whether Mayor Daley can be sued in his personal capacity at a later point in time is irrelevant to a showing that he should not be dismissed from this suit where he is sued in his official capacity. The claims against Mayor Daley are duplicative of the claims against Chicago and so all claims against him are dismissed. *See Tabor v. City of Chicago,* 10 F.Supp.2d 988, 991 (N.D.Ill.,1998).

This Court also requested Plaintiffs show cause as to why counts intended to halt action before FAA approval were not moot in light of FAA approval and why this Court should exercise jurisdiction over claims brought against the FAA. Plaintiffs responded by arguing that any problems related to the first Amended Complaint were resolved in the second amended complaint that they were proposing to file. Their response to the rule to show cause consistently refers to the proposed Second Amended Complaint, even with respect to the First Amendment, Fourteenth Amendment, and RLUIPA claims that were not the subject of the show cause order. Moreover, Plaintiffs specifically state in their response that "[i]n light of the motion to file the Second Amended Complaint, plaintiffs respectfully submit that the Court not dismiss the FAA from this case, but rather allow the filing of the Second Amended Complaint." Their decision to forego addressing this

Court's concerns with respect to the first Amended Complaint, coupled with their request for permission to file a second amended complaint, indicate that Plaintiffs intend that this Court revisit the issues raised in the show cause order in light of their proposed Second Amended Complaint.

Because the Plaintiffs placed so much store on the proposed Second Amended Complaint in responding to the rule to show cause and because the Defendants argue that the proposed Second Amended Complaint is defective and leave to file it should be denied, this Court will address it first. Of course, if leave is granted, the Second Amended Complaint will supercede the Amended Complaint and any objections to the latter will be moot. As the law requires, for present purposes, the facts alleged in the proposed Second Amended Complaint will be taken as true.

*Claims against Chicago*

When reviewing the St. John's Plaintiffs' Free Exercise, Equal Protection, and RLUIPA claims, it is helpful to bear in mind what one court refers to as the "tug of war" between Supreme Court and Congress with respect to the review of governmental actions affecting religious actors. In 1990, the Supreme Court held in *Employment Division v. Smith*, 494 U.S. 872, 879 (1990) that the Free Exercise Clause does not grant religious actors a reprieve from compliance with neutral laws of general applicability. The Court refused to apply the balancing test employed in *Sherbert v. Verner*, 374 U.S. 398 (1963) which held that government actions that impose a substantial burden on religious practice must be justified by a compelling governmental interest. *See Smith*, 494 U.S. at 883-8. The Court concluded that *Sherbert* applied to the narrow issue of denial of unemployment and did not apply to neutral laws of general applicability. *See Smith* at 879.

Congress responded to *Smith* by enacting the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §2000bb et seq. The stated purpose of RFRA was to replace the neutrality test with the 'compelling interest test' as set forth in *Sherbert* and *Wisconsin v. Yoder*, 406 U.S. 205(1972), and to guarantee its application in all cases where free exercise of religion is substantially burdened. 42 U.S.C. §2000bb(b)(1) & (a)(2). The Supreme Court then held that RFRA was unconstitutional as applied to the states. *See City of Boerne v. Flores*, 521 U.S. 507 (1997). In response, Congress passed the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc et seq.. The language of RLUIPA, like that of the federal RFRA, opts to forgo the neutrality approach. But unlike RFRA, RLUIPA applies only to burdens that are imposed by land use regulations or are imposed by regulations relating to institutionalized persons.

This evolution is significant because with unless strict scrutiny is applied to their claims, the "less burdensome" analysis advocated by St. John's Plaintiffs does not apply to review of the actions of the City and the FAA.

St. John's Plaintiffs devote a significant amount of their complaints discussing how Chicago's actions do not survive strict scrutiny review because of violations of the Free Exercise Clause. What Plaintiffs fail to note, however, is current Supreme Court jurisprudence on the Free Exercise Clause does not require a court to apply strict scrutiny simply because a religious actor is involved. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993); *see also, Employment Div. Dept. Res. Of Oregon v. Smith*, 494 U.S. 872, 878 (1990). "A law that is neutral and of general applicability need not be justified by a compelling government interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* The Seventh Circuit has explained, "no Free Exercise Clause violation results where a burden on religious

-16-

exercise is the incidental effect of a neutral, generally applicable, and otherwise valid regulation, in which case such regulation need not be justified by a compelling governmental interest." *C.L.U.B. v. City of Chicago*, 342 F.3d 752, 763 (7th Cir. 2003).

This Court begins with a review of Plaintiffs' claims in the proposed Second Amended Complaint. According to the proposed Second Amended Complaint, the St. John's Plaintiffs believe that they are entitled to relief because the City's actions in the passage of §30, the amendment to the Illinois RFRA, violate the Free Exercise Clause. As noted earlier, §30 states that "[n]othing in this Act [the Illinois RFRA] limits the authority of the City of Chicago to exercise its powers under the O'Hare Modernization Act for the purposes of relocation of cemeteries or graves located therein." 775 ILCS 35/30.

This Court fails to see why it should apply strict scrutiny when reviewing the City's actions with respect to the passage of §30. The Supreme Court noted in *Smith* that strict scrutiny applies only to laws that discriminate against religion. *Smith,* 494 U.S. at 885. There is no indication in the complaint that the object of the law "is to infringe upon or restrict practices *because* of their religious motivation." *See CL.U.B.* at 763 (emphasis added); *see also City of Hialeah*, 508 U.S. at 532 (government action violates neutrality requirement if it "discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons."). Even assuming that Chicago is responsible the addition of §30 to the Illinois RFRA, the amendment does not single out St. Johannes or any other cemetery because of its religious affiliation. Furthermore, there is no indication that the government, in pursuit of the legitimate interest of O'Hare expansion has selectively imposed burdens "only on conduct motivated by religious belief." *See Hialeah,* 508

U.S. at 532. The language of the amendment applies to any and all cemeteries that are in the path of O'Hare expansion, regardless of religious affiliation or lack thereof.

Moreover, none of the allegations in the complaint give rise to the inference that the facially neutral language masks more insidious underpinnings. In *City of Hialeah*, for example, Hialeah argued that the facially neutral ordinances outlawing slaughter of animals advanced the public's legitimate interest in protecting public health and preventing cruelty to animals. The Supreme Court determined that Hialeah's ordinances constituted a religious gerrymander intended to affect Santeria adherents but almost no others, in violation of the Free Exercise Clause. *Id.* at 536. Plaintiffs do not allege that Chicago wanted the legislature to pass §30 so that it could satisfy a goal of impeding the St. John's Plaintiffs religious practice by building runways over St. Johannes Cemetery. Nothing in the complaint supports the proposition that Chicago wants the St. Johannes land for any reason other than the reason that it wants all the other land within project boundaries: for the expansion of O'Hare Airport. The language brings the treatment of cemeteries in line with the treatment of all other land in the path of expansion.

Because is no indication that §30 discriminates against religion, this Court applies rational basis review to the City's actions. The actions of Chicago are rationally related to the legitimate government objective of expanding and improving O'Hare. To be sure, the passage of §30 was an inartful way to anticipate (and head-off) attempts to use the Illinois RFRA to block O'Hare expansion. Nevertheless, it is clear that the provision was not enacted to single out cemeteries for invidious treatment, but rather to preclude the argument that any cemetery would be entitled to more favorable treatment than other properties in the path of O'Hare expansion.

In one of their briefs, Plaintiffs argue that the passage of the "Chicago sponsored" §30 and the "separate acts of "individualized assessment" towards St. Johannes either individually or collectively "trigger First Amendment Free Exercise protection." Plaintiffs appear to confuse the issue of individualized exemptions–an indication that the law is not neutral and generally applicable–with the concept of individualized assessments under RLUIPA. Regardless, they do not merit relief. As noted earlier, the law in question is neutral and generally applicable. No facts in the complaint give rise to an inference that "individualized exemptions from a general requirement are available." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 537 (1993). In *Church of Lukumi Babalu Aye*, for example, the legislation prohibited all religious slaughter of animals while providing exemptions for most non-religious slaughter of animals. In this case, by comparison, the proposed Second Amended Complaint does not give rise to the inference that there exists any procedure by which any individuals within the proposed acquisition area can obtain exemptions from condemnation nor is there any indication that any individuals are exempt. *See C.L.U.B.*, 342 F.3d at 764 (rejecting "individualized exemption claim" when "no person, nor any nonconforming land use, is exempt" from ordinance in question.).

The concept of "individualized assessments" appears in the RLUIPA context. See 42 U.S.C. § 2000cc(a)(2)(C)("the substantial burden is imposed in the implementation of a land use regulation or system of land use regulations, under which a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved."). This Court need not get to the issue of whether Chicago will make individualized assessments in violation of RLUIPA, however, because RLUIPA does not apply.

Turning then, to RLUIPA, this Court concludes that it does not apply to the actions alleged in this case. The St. John's Plaintiffs claim, in Count V, that Chicago will violate RLUIPA if it acquires St. Johannes Cemetery without first demonstrating that it needs to acquire the land to accomplish a compelling governmental interest and that there is no alternative to accomplish the compelling governmental need which would not impose the burden on religious activity. The problem with this claim is that RLUIPA only applies to government actions that "impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person." 42 U.S.C. §2000cc. The term "land use regulation" is defined as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land...." 42 U.S.C. §2000cc-5(5). In this case the City is seeking to exercise eminent domain power. Nothing in the proposed Second Amended complaint leads to the inference that the City's authority to acquire the land stems from any zoning regulations or landmarking law (which is unsurprising given that the City makes no assessment of the land it seeks to condemn.)

The St. John's Plaintiffs argue that the City's actions–even without any allegations that they are taken pursuant to a zoning regulation or landmarking law–are subject to the heightened review of RLUIPA. In support, they cite they cite *Cottonwood Christian Center v. Cypress Development Agency*, 218 F.Supp.2d 1203 (C.D.Cal. 2002).[6] Plaintiffs contend that *Cottonwood* stands for the

---

[6] Plaintiffs also cite *Faith Temple Church v. Town of Brighton*, 2005 WL 66210 (W.D.N.Y. Jan. 12 2005). In *Faith Temple*, the District Court determined that it could not decide whether to grant the plaintiff's request for a preliminary injunction until it held a hearing on whether the Town's condemnation would violate RLUIPA. The court, rather than undertaking an analysis of whether RLUIPA applied, proceeded under the assumption that it did and ordered a hearing as to the merits of the plaintiffs' injunction request. The conclusory

proposition that all exercises of eminent domain authority are subject to RLUIPA. This Court is not willing to take such an expansive view, nor does it believe that *Cottonwood* stands for such a sweeping proposition. While this Court may not agree with the passing reference to eminent domain in *Cottonwood*, that case can be read to suggest that RLUIPA is applicable to the specific eminent domain actions where the condemnation proceeding is intertwined with other actions by the city involving zoning regulations.[7]

In one of the many briefs filed in this case, the St. John's Plaintiffs argue that the City's actions can be linked to zoning regulations because the City's proposed actions "imposes severe restrictions on St. John's use or development of St. Johannes." These restrictions, according to St. John's Plaintiffs, are attempts to regulate the land and so are an act of zoning. To call the acquisition of St. Johannes a restriction on St. John's use of the land, however, is more than mere understatement; it is, in fact, an incorrect classification of the actions at issue in this case. Chicago is not seeking to restrict the uses of St. John's–it is planning on acquiring the land pursuant to its eminent domain authority and then using it for the public purpose of expanding the airport. Land use regulations limit the use of property. Condemnation is, in one sense, the ultimate limitation on the use of property. It does not follow, however, that condemnation is a land use regulation as this

_____

determination of a district court in another circuit is not binding authority nor, in this particular case, is it persuasive.

[7] Defendants make much of the fact that in *Cottonwood* there was indication in the record that the municipality's exercise of eminent domain was taken pursuant to a resolution that itself was based on a zoning regulation. The district court stated, "[t]he Redevelopment Agency's authority to exercise eminent domain to contravene blight, as set forth in the Resolution of Necessity, is based on a zoning system developed by the City (the LART Plan)." *Id.* at 1221, fn. 7. This Court does not find the Cottonwood court's reasoning persuasive as it relates to such an attenuated relationship between eminent domain and zoning.

term is used in the statute. Congress could have included "takings" within the reach of RLUIPA but did not. This Court is no persuaded that it should construe the concept of zoning so broadly that any acquisition of land by the City pursuant to eminent domain proceedings is an act of zoning.

This Court is certainly cognizant of the RLUIPA admonition that "[t]his chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."42 U.S.C.A. § 2000cc-3. It is important to note that this Court's holding that the City does not act pursuant to a zoning or landmarking law should not be taken to mean that all condemnation proceedings necessarily are outside the scope of RLUIPA. This Court expresses no opinion with respect to that conclusion.[8] The St. John's Plaintiffs' contention that all condemnation proceedings are land use regulations dealing with zoning, however, is not an attempt to construe the statute broadly but rather is an attempt to rewrite it. Again, as with their Free Exercise claim, St. John's Plaintiffs contend that they deserve more protection than the law provides. They fail to state a claim under RLUIPA.

The St. John's Plaintiffs also allege a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution on the basis of the City's violation of their fundamental right to the free exercise of religion. Similar to their arguments with Count I, St. John's Plaintiffs state that "Count III is based on the action of the Illinois Legislature in exempting–again at Defendant Chicago [sic] request–these two religious cemeteries from the protection of Illinois RFRA while preserving Illinois RFRA protection for every other religious institution (including all other religious cemeteries) in the State." As noted earlier, however, the text of the amendment to

---

[8] For example, an act to acquire land (through eminent domain) and then to rezone it and transfer it might very well fall with the reach of RLUIPA.

the Illinois RFRA and the facts alleged in the complaint do not suggest that Illinois RFRA protection has been stripped for only St. Johannes Cemetery: instead, the amendment states that any and all cemeteries (as well as other property) in the path of the O'Hare expansion are subject to acquisition pursuant to the O'Hare Modernization Act. "Where a plaintiff's First Amendment Free Exercise claim has failed, the Supreme Court has applied only rational basis scrutiny in its subsequent review of an equal protection fundamental right to religious free exercise claim based on the same facts." *Wirzburger v. Galvin,* 412 F.3d 271, 282 -283 (1st Cir. 2005)(citations omitted). Given that Chicago's actions seeking to acquire land adjacent to O'Hare are rationally related to a legitimate government interest in expanding airport capacity, this Court finds no Equal Protection violation on this basis.

Plaintiffs' First Amended Complaint, currently pending before this Court, also fails to state a claim with respect to the St. John's Plantiff's Free Exercise, Equal Protection, and RLUIPA claims. Again, Plaintiffs fail to allege facts supporting an inference that Chicago's actions were anything but neutral and generally applicable. They also fail to suggest that a land use regulation caused them harm such that they have a claim under RLUIPA. And finally, they fail to allege facts supporting a conclusion that Chicago's conduct was not rationally related to a legitimate governmental interest as is required when raising an equal protection violation that is based on a failed Free Exercise Claim. *See Wirzburger,* 412 F.3d at 282-283 (citations omitted). Because of Plaintiffs' failure to state a claim with respect to these claims, Counts IV, VIII, XII, and XVIII of the Amended Complaint are all DISMISSED.

*Claims Against the FAA and Blakey*

-23-

The bulk of Plaintiffs' claims in the proposed Second Amended Complaint concern the FAA. As a threshold matter, it is necessary to determine whether this Court may exercise jurisdiction over those claims. As this Court noted in the memorandum accompanying its rule to show cause issued on October 12, 2005, the text of 49 U.S.C. §46110 limits district court review. According to the plain language of the statute, a person disclosing a substantial interest in an order issued by the Administrator of the FAA "in whole or in part under this part, part B, or subsection (l) or (s) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business." 49 U.S.C. §46110(a).[9] The terms "this part" refer to the Air Commerce and Safety provisions ("Part A") of the Aviation Programs Subtitle of Title 49. See 49 U.S.C. §40101 et seq. The term "Part B" refers to the Airport Development and Noise provisions ("Part B") of that same Subtitle. See 49 U.S.C. §47101 et seq. Part B includes the provision which grants FAA the authority to approve ALPs. 49 U.S.C. § 47107(a)(16). The statute provides that the reviewing Court of Appeals "has *exclusive jurisdiction* to affirm, amend, modify, or set aside any part of the order and may order the Secretary, Under Secretary, or Administrator to conduct further proceedings." 49 U.S.C. §46110(a)(emphasis added).

_____

[9] This procedure is also outlined in the FAA's ROD. In the "Right of Appeal" section of the ROD, the FAA states that "[t]his ROD presents the Federal Aviation Administration's final decision and approvals for the actions identified, including those taken under the provisions of 49 U.S.C. Subtitle VII, Parts A and B. This decision constitutes a final order of the Administrator subject to review by the Courts of Appeals of the United States in accordance with the provisions of 49 U.S.C. Section 46110."

Plaintiffs seeking appellate court review need not only bring claims that refer to the specific statutory provision granting exclusive appellate jurisdiction; the fact that a plaintiff alleges violations of substantive laws that could otherwise be brought in district court does not defeat appellate court jurisdiction. For example, in *Gaunce v. DeVincentis*, 708 F.2d 1290 (7th Cir. 1983), the Seventh Circuit determined that the Court of Appeals retained exclusive jurisdiction over a challenge that was brought pursuant to both the Federal Aviation Act–which provided for review in the court of appeals–and the United States Constitution. *See Dole*, 787 F.2d at 192. Instead, "[m]ore broadly, statutes such as Section 46110(c) that vest judicial review of administrative orders exclusively in the courts of appeals also preclude district courts from hearing claims that are 'inescapably intertwined' with review of such orders. *Merritt I*, 187 F.3d at 271. A claim is inescapably intertwined in this manner if it alleges that the plaintiff was injured by such an order and that the court of appeals has authority to hear the claim on direct review of the agency order. *City of Tacoma  v. Taxpayers of Tacoma*, 357 U.S. 320, 336, 339, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958)." *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 187 (2nd Cir. 2001). While litigants may seek, through careful pleading, to avoid the strict jurisdictional limits imposed by Congress, there is not reason to believe "that the jurisdictional remedy prescribed by Congress hangs on the ingenuity of the complaint." *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912 (9th Cir. 1989).

As Seventh Circuit concluded in *Dole*, "[i]f there is any ambiguity as to whether jurisdiction lies with a district court or with a court of appeals we must resolve that ambiguity in favor of review by a court of appeals. If a decision of an administrative agency is based, in

substantial part, on a statutory provision providing for exclusive review by a court of appeals, then the entire proceeding must be reviewed by a court of appeals." *Dole*, 787 F.2d at 192-193.

The requirements of 49 U.S.C. §46110 should come as no surprise to Plaintiffs. After all, the Municipal Plaintiffs and the St. John's Plaintffs (collectively referred to as ("Petitioners") filed a petition for review pursuant to U.S.C. 49 U.S.C. §46110(a) on September 30, 2005 in the District of Columbia Court of Appeals. In that petition, the Petitioners alleged, *inter alia*, that the FAA's actions violate the First and Fifth Amendments and Article III of the Constitution, RFRA, NEPA, Chapter 471 of Title 49 of the United States Code, Section 4(f) of the Department of Transportation Act, Section 6(f) of the Department of the Interior Land and Water Conservation Fund Act, Section 106 of the NHPA, and Section 176(c) of the Clean Air Act. That same day they filed an emergency motion for a stay pending appeal which was granted and a motion for an administrative stay which was eventually denied.

Plaintiffs elaborated on the issues before the D.C. Circuit in their appellate court docketing statement. In that non-binding statement they submitted 14 different issues to the D.C. Court of Appeals. Several of those issues reappear in the same or slightly altered form in Plaintiff's proposed Second Amended Complaint.

This Court lacks subject matter jurisdiction over some of these claims. For example, Counts VII, IX, and X of Plaintiffs' proposed Second Amended Complaint are all based on allegations of shortcomings with the ROD and the FAA's approval process for the ALP.

In Count VII, the St. John's Plaintiffs allege that the FAA violated RFRA when it approved the City's ALP. The St. John's Plaintiffs state in the RFRA claim found in the

proposed Second Amended Complaint that the matter "is currently before the United States Court of Appeals for the District of Columbia" and that the St. John's Plaintiffs "have filed this RFRA Count in this Court as a matter of protective jurisdiction to ensure that their federal RFRA claim is not deemed waived." They ask Court to "defer ruling on [the] claim that they are entitled to an Article III tribunal on the contested issues of fact relating to RFRA compliance until the United States Court of Appeals has ruled on that issue." Plaintiffs claim they make this request in the hopes that they can return to this Court with their RFRA claim should the D.C. Court of Appeals determine that disputed issues of RFRA compliance should be tried in an Article III district court. This Court does not believe that it is proper for it to retain jurisdiction on the basis of this argument. Nothing in the statute leads this Court to the conclusion that Congress intended for district courts to remain "on call" with respect to disputed factual issues that surface during appellate court review of an agency's approval of an airport layout plan.

Counts IX and X also relate to questions about the ALP approval process. In Count IX, Plaintiffs allege they have a right to have contested issues of fact related to their RFRA claims tried and determined by an Article III Court instead of the FAA pursuant to its ALP approval process and in Count X, Plaintiffs allege that the FAA violated the Due Process Clause and Article III by serving as an adjudicatory tribunal in ALP approval process. Plaintiff's request that Count X be stayed is denied: there is no reason for this Court to stay a count over which it does not have jurisdiction. Given Plaintiffs failure to provide this Court with any logical basis for concluding that 49 U.S.C. §46110(a) does not preclude it from exercising jurisdiction over these

claims, Plaintiff's request to file a proposed Second Amended Complaint is denied with respect to Counts VII, IX, and X.[10]

Some claims Plaintiff propose are inescapably intertwined with the ROD and therefore are subject to review in the D.C. Circuit. After reading the parties' submissions and holding oral argument, it has become clear to this Court that Plaintiffs intend to concurrently litigate the issue of agency funding in both this Court and the D.C. Circuit. In both forums, Plaintiffs focus on the relationship between funding under the Aviation Act and violations of federal laws such as NEPA. In the D.C. Circuit, they take issue with the agency for issuing a ROD that approved of the ALP but did not make any funding determinations. They argue that [t]hat short-sighted and disjointed decision-making process is barred by the NEPA regulations" as well as the AAIA. In this Court, they argue that by allowing Chicago to proceed with acquisition before it makes its funding decision, the FAA is violating NEPA and a host of other federal statutes and regulations including the AAIA. In both courts they argued that acquisition without funding raised particular

---

[10] Their reticence is somewhat puzzling in light of the fact that this Court has repeatedly raised the issue of subject matter jurisdiction–including the specific question of the impact of 49 U.S.C. §46110 on this Court's ability to entertain Plaintiffs' claims–with Plaintiffs. At one point in the voluminous briefing in this case, Plaintiffs suggested that jurisdiction for judicial review of the FAA's actions with respect to Airport Layout Plan approvals is in the district court. In support, Plaintiffs cited to two cases where appellate courts found no jurisdiction to review directly an FAA order approving an airport layout plan based on the language found in an older version of the statute. *See Committee to Stop Airport Expansion v. FAA*, 320 F.3d 285, 288 (2nd Cir. 2003) and *City of Alameda v. FAA*, 285 F.3d 1143, 1145 (9th Cir. 2002). As the FAA correctly notes, the version of the statute cited in those cases has been superceded by a more inclusive version. On December 12, 2003, Congress modified the statute by providing that the Courts of Appeals have exclusive jurisdiction over orders that are issued "in whole or *in part* under this part [part A], *part B*, or subsection (l) or (s) of section 114". 49 U.S.C. §46110(a) (emphasis added).

dangers for plaintiffs who stand to lose lands hastily acquired by Chicago without FAA guarantee of funding.

The arguments Plaintiffs raise in this Court with respect to the FAA's actions allowing Chicago to acquire land before the issuance of a funding decisions by their nature require attention to the issues currently before the D.C. Circuit where Plaintiffs raise arguments dealing with the FAA's failure to issue a funding decision with its ROD that approved Chicago's proposed ALP. Plaintiffs' challenge of agency procedures and reasoning–a challenge raised in this court–is "inescapably intertwined with a review of the procedures and merits surrounding the FAA's order." *See Merritt v. Shuttle Inc.*, 187 F.3d 263, 271 (2nd Cir. 1999). The review of procedures and merits is already underway in the D.C. Circuit.

The D.C. Circuit has issued one ruling in response to a motion that raised the issue of funding and may find reason to issue other rulings on that topic. Deference to the D.C. Circuit requires that those issues not be decided in a piecemeal fashion by different courts. Rather than contributing to the confusion, and bearing in mind the statement in Dole that "[i]f there is any ambiguity as to whether jurisdiction lies with a district court or with a court of appeals we must resolve that ambiguity in favor of review by a court of appeals," this Court will deny Plaintiffs' leave to file claims related to FAA funding in this Court. See Dole, 787 F.2d at 192-193.

The St. John's Plaintiffs also raise a series of claims related to the FAA's *future* funding decisions with respect to the O'Hare Modernization Project. See Counts II (future funding will violate Free Exercise Clause), IV (future funding will violate the Equal Protection Clause), and VII in part (future funding will violate RFRA). With respect to all of these counts, Plaintiffs

allege that the FAA and Blakey have "declared their intent" to provide Chicago with funding but do not allege that a final decision on the funding issue has been made. On November 11, 2003, Plaintiffs filed a motion to apprise this Court of the FAA's statement in the D.C. Circuit that it had not yet issued a final funding decision.

The decision to frame these claims in terms of future funding decisions appears to be an attempt to avoid the exclusive jurisdiction requirements of 49 U.S.C. §46110. After all, if the claims raised in this Court concerned the FAA's completed decisions on funding, this Court would not have jurisdiction to hear them. See 49 USC §46110. Regardless, opting to frame the claims as not-yet-issued future decisions that will cause harm does not help Plaintiffs obtain district court review.[11] A mere allegation that the FAA intends to act a certain way in the future is not sufficient to gain relief in this Court.

Plaintiffs contend that if this Court does not entertain claims related to future funding issues, they will have no forum in which to present them. Plaintiffs are reminded that Article III does not guarantee litigants a forum where all perceived wrongs may be addressed at all times. In this case, there are legitimate reasons for refusing to issue relief for a decision that the agency has not yet made. Congress empowered the FAA to make funding decisions and limited review of those decisions to the courts of appeals. This Court will not upset that scheme simply because

---

[11] In these claims, Plaintiffs also include conclusory legal statements regarding how FAA officials and personnel assisted Chicago in the various alleged violations "by making material misstatements of fact or engaging in material omissions of fact as to factual issues relating to the elements of compelling need and the availability of alternatives" under the First Amendment Clause (Counts II and VI), and the "strict scrutiny Equal Protection analysis" (Count IV). Be that as it may, these claims are best reviewed in the D.C. Circuit, as they are inescapably intertwined with the FAA's issuance of the ROD.

Plaintiffs are concerned that at some point in the future the FAA and Blakey will approve of funding to be used for O'Hare expansion. This Court will not issue orders predicated on guesses as to what the FAA will decide with respect to funding. The agency has not yet made a decision and so there is no guarantee what that decision will be.

Plaintiffs counter that they should be able to file suit here because under *Old Town Neighborhood Ass'n v. Kauffman*, 333 F.3d 732 (7th Cir,. 2003), a district court has jurisdiction to review claims that stem from a defendants's provision of assistance to a local government that then uses the funding to perpetrate violations of federal constitutional and statutory rights. In *Old Town*, however, there was no indication that the courts of appeals had exclusive jurisdiction with respect to orders issued by the federal agency. The district court had no qualms about proceeding with judgment, nor did the Seventh Circuit contend that the district court should have refrained from acting because of a lack of subject matter jurisdiction. Nor was there any indication in *Old Town* that the plaintiffs had filed suit in both district and appellate court with the uniform goal of stopping the acquisition of land.[12]

Count VI of Plaintiffs' proposed Second Amended Complaint alleges that the FAA will violate RLUIPA by providing funding for Phase One of the OMP. Like Counts II, IV, and part of VII, it is not ripe. Moreover, as with other claims, 49 U.S.C. §46110 indicates that the proper forum for the presentation of this claim when it is ripe is the D.C. Circuit.

---

[12] What's more, in *Old Town* the Plaintiffs had shown that there was a substantial likelihood that Defendants were going to violate federal law. Plaintiffs have failed to do so in this case. They allege that Defendants will violate the law by funding Chicago's violations.

As for the claims alleged against the FAA in Plaintiff's Amended Complaint, none of them survive this Court's rule to show cause. The counts were all filed in response to the threat that Chicago would seek to acquire the land before the FAA had completed its various analyses of the St. John's Plaintiffs religious claims and before the FAA had issued an ROD approving the ALP. Consequently, they are all now moot. The St. John's Plaintiffs have filed revised versions of some of these claims in the D.C. Circuit. The last claim of the Amended Complaint has been superceded by the sole claim that now constitutes the Second Amended Complaint.

That sole viable claim is Plaintiffs' FOIA claim. In Count XI of the proposes Second Amended Complaint, Plaintiffs argue that the FAA has hidden several thousand documents, including many documents that "are relevant to [St. John's] Plantiffs' claims under the First Amendment, RLUIPA, and RFRA, and all the Plaintiffs's claims under NEPA, related statutes and the AAIA." The FAA Defendants argue that Plaintiffs' FOIA claim is simply an attempt to indirectly attack the administrative record that is currently before the D.C. Circuit. While FOIA is not a discovery tool and the statute was not intended to facilitate civil discovery, this Court cannot conclude that Plaintiffs have failed to allege a valid FOIA claim. Furthermore, it appears that Plaintiffs may not file their FOIA claim in the D.C. Circuit because the FOIA statute grants jurisdiction for filing claims in the district courts. 5 U.S.C. §552(g)(1). Plaintiffs are therefore granted leave to file their proposed Second Amended Complaint as it relates to Count XI and Count XI only.

## Conclusion

Plaintiffs' motion to file a proposed second Amended Complaint is DENIED with respect to Counts I through X but GRANTED with respect to Count XI. Given that no unique counts remain

in the first Amended Complaint that overcome the problems raised by this Court in its show cause order and in this opinion, Plaintiffs' first Amended Complaint is DISMISSED. The TRO is VACATED. Based on the actions in this opinion, Plaintiff's motion for a preliminary injunction is DENIED as MOOT.

At the conclusion of this case, this Court is reminded of the Seventh Circuit's ending to an airport expansion case. The Court of Appeals remarked, "Petitioners conceive of themselves as the innocent, passive victims of a relentlessly expansive O'Hare. They point out that many of the communities surrounding O'Hare were established long before the airport had been built. In all fairness, however, these same communities receive enormous economic benefits from their proximity to O'Hare. Moreover, many of these communities have resisted attempts by the City to harmonize their own land-use regulations with the aviation activity at O'Hare. In a perfect world, petitioners would be able to reap the benefits of their location and still be able to sleep without noise disturbances at night. Unfortunately, the FAA and the City are forced to operate in a world where even their most carefully considered decisions are likely to adversely affect some people." *Dole*, 787 F.2d at 200 (7th Cir.1986). Simply because there is adverse effect, however, does not mean that expansion must be halted.

Enter: 

_____
David H. Coar
United States District Judge


Dated:11/16/05

-33-